IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| THOMAS CAUSEY,<br>    PLAINTIFF,<br><br>v.<br><br>CAPITAL MANAGEMENT HOLDINGS, LLC<br>a/k/a ELITE DEBT BROKERS,<br>DEBT MANAGEMENT PARTNERS, LLC, and<br>HARTFORD CASUALTY INSURANCE COMPANY,<br>    DEFENDANTS. | CASE NO.: 4:20-cv-1318 |

## COMPLAINT AND JURY DEMAND

### JURISDICTION AND VENUE

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

2. Supplemental Jurisdiction exists pursuant to 28 U.S.C. § 1367.

3. This action arises out of the violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), and the Texas Finance Code by Capital Management Holdings, LLC ("CMH") and Debt Management Partners, LLC ("DMP").

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), in that defendants transact business in this judicial district and a substantial portion of the acts giving rise to this action occurred in this District.

5. Plaintiff resides in this District.

### PARTIES

6. Plaintiff, Thomas Causey ("Plaintiff"), is an adult individual residing in Comanche County, Texas, and is a "consumer" as the term is defined by 15 U.S.C. § 1692a(3) and Tex. Fin. Code § 392.001(1).

1

7. DMP is a Delaware company.

8. As will be described below, DMP purchased an Account allegedly owed by Plaintiff from a third-party for the purpose of collecting on that Account to make a profit.

9. The principal purpose of DMP is the collection of debts by using the mails and telephone and other means.

10. DMP regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property, or services which are the subject of the transactions are primarily for personal, family or household purposes.

11. DMP is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and as that term is defined by Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tx. Fin. Code § 392.001(7).

12. CMH is a New York company operating from Staten Island, New York, according to its website (www.cmhdebt.com/home) (last visited September 2, 2020).

13. CMH is not registered to do business in Texas, but can be served in New York via its registered agent, Corporation Service Company, at 80 State Street, Albany, NY 12207.

14. CMH advertises on its website (www.cmhdebt.com) (last visited September 2, 2020), that it "specializes in buying and selling debt."

15. As will be described below, CMH received placement of a past due account from DMP and attempted to collect that account from Plaintiff.

16. As will be described below, CMH directed communications to Plaintiff for the purpose of collecting the Account in question from him.

17. As can be seen on the website for the Better Business Bureau, other consumers have complained about the treatment they received during direct communications from CMH as well (https://www.bbb.org/us/ny/staten-island/profile/collections-agencies/capital-management-holdings-0121-167012/complaints) (last visited September 2, 2020).

18. The principal purpose of CMH is the collection of debts using the mails and telephone and other means.

19. CMH regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property, or services which are the subject of the transactions are primarily for personal, family or household purposes.

20. CMH is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and as that term is defined by Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tx. Fin. Code § 392.001(7).

21. Defendant Hartford Casualty Insurance Company ("Hartford") is the surety company for the bond DMP has on file with the Texas Secretary of State, bond number 20BSBGV8871. Hartford is liable for acts committed by DMP pursuant to, and to the extent provided by, Chapter 392 of the Texas Finance Code and a bond secured pursuant thereto, as well as any other applicable law.

22. Hartford is a foreign entity that can be served in the state of Texas via its registered agent, C T Corporation System, at 1999 Bryan St., Suite 900, Dallas, Texas, 75201.

## FACTUAL ALLEGATIONS

23. At some time in the past, Plaintiff allegedly incurred a financial obligation that was primarily for personal, family or household purposes, namely an amount due and owing on

a personal account (hereinafter the "Account").  Specifically, plaintiff believes the account was a payday loan obtained from The Cash Store to pay for various personal effects, but was not used for any business or commercial purposes.

24. The Account constitutes a "debt" as that term is defined by 15 U.S.C. § 1692a(5) and is a "consumer debt" as that term is defined by Tex. Fin. Code § 392.001(2).

25. The Account allegedly went into default with the original creditor, The Cash Store.

26. After the Account allegedly went into default, the Account was purchased by DMP for collection.

27. DMP placed the Account with, or otherwise transferred the Account to, CMH.

28. CMH then contacted Plaintiff directly to collect on the Account from Plaintiff.

29. DMP maintained a financial interest in the Account at all times relevant hereto, such that DMP would make more money if CMH collected on the Account than it would make if CMH did not collect on the Account.

30. Plaintiff admits the existence of the Account, but disputes the amount CMH and DMP attempted to collect from him.

31. Plaintiff requests that defendants cease all further communications regarding the Account.

32. When attempting to collect the Account, CMH used the unregistered fictitious business name of "Midland."

33. CMH also does business under the fictitious name "Elite Debt Brokers."

34. During the one year prior to the filing of the original complaint in this matter, more specifically in July 2020, CMH caused voicemail messages to be left with Plaintiff.

35. One such voicemail left for Plaintiff on July 14, 2020, stated:

> Hi, this message is for Mr. Thomas Causey. Mr. Causey, my name is Robert Kelly, I'm a compliance officer and I'm contacting you in reference to your pending claim that's being filed. I do have to make you aware that when file number 417011 is completed it will become a matter of public record and there will be an order of location issued for you requiring a signature on your behalf. If I was not able to reach you by phone, I was instructed to contact your employers. It looks like this could be a possible place of location. Due to negligence on your end regarding this claim. Mr. Causey, you do have a legal right to contact the office that is processing your claim. Once your claim is officially filed, all other options are to be forfeited. The number that's listed on this paperwork for you to contact them is 1-833-637-0163 referencing file number 417011 this is a legal notification by telephone and it will be documented on the claim.

36. CMH left another voicemail for Plaintiff on July 16, 2020, which stated:

> This message is meant specifically and solely for Thomas Causey. Mr. Causey, my name is Robert Kelly, I was contacting you again today in reference to a claim that is being filed in your name. I'm notifying you were given the opportunity to contact the office that's responsible for handling your claim and I have yet to receive any documentation to stop the previous order of location. My call today is to confirm the scheduled delivery location. I am responsible for obtaining a signature by being in the business tomorrow, which is the seventeenth of July, Friday. I have two addresses listed. I don't know which one that I need to have you sign off on so its imperative that you do return the call. Now, I'm gonna provide the filing party's information one last time. You are to return their call to 1-833-637-0163, referencing file number 417011. Mr. Causey please be advised that if the filing party is not contacted, I have no other choice but to continue moving forward with your order of location. And I'll need for you to be available either at your residence or at your place of employment to sign off on this paperwork. If you're not present upon my arrival, I have to mark it down as a direct refusal that will result in forfeiture of all legal rights pertaining to this claim.

37. These messages contained multiple false and deceptive statements, including but not limited to the statements that a claim was being filed against Plaintiff, that the Account would become a matter of public record. Further, there was no "order of location" and there was no "scheduled delivery location" and there would be no forfeiture of any of Plaintiff's rights if he did not return the call.

38. CMH also left a voicemail message on the phone belonging to a friend of Plaintiff's which stated that a claim was being filed against Plaintiff and that Plaintiff's friend

should encourage Plaintiff to call back to CMH's office or Plaintiff would forfeit legal rights regarding the claim.

39. The disclosure to Plaintiff's friend amounted to an unauthorized third-party disclosure.

40. The disclosure to Plaintiff's friend resulted in humiliation suffered by Plaintiff when Plaintiff learned that his friend knew of his financial troubles.

41. Plaintiff called back to the phone number provided in the voicemail messages after receiving these calls and was told by CMH's employee, "Jacob Weisenberg" who identified as the "Executive Director here with the firm" that CMH was handling a civil matter, a civil claim against Plaintiff and accused Plaintiff of acting with "intent of either misleading or defrauding a financial servicing company" and further asked Plaintiff "is this something you can resolve voluntarily outside of the court setting?"

42. In the call back to CMH, "Jason Weisenberg" further stated "this is time sensitive, so I would have to notify the county that I am issuing out a cease and desist on your behalf to allow you the chance to take care of this matter voluntarily.  I would have to notify them that my client is foregoing legal action at this time."

43. These statements described in paragraphs 41 and 42 above were false and deceptive.

44. By making all of the statements detailed above, CMH indirectly or directly told Plaintiff that a lawsuit had been filed or immanently would be filed against him.

45. The communications described above would cause the least sophisticated consumer to believe that a lawsuit had been filed or immanently would be filed against him or her, that a process server was about to serve him or her at work or at home, that a crime had been committed related to financial fraud and that involuntary enforcement proceedings against Plaintiff were imminent.

46. As of the filing of this Complaint, no lawsuit has been filed against Plaintiff on the Account.

47. At the time CMH made the statements detailed above, neither CMH nor DMP had any intent to sue Plaintiff on the Account.

48. In one or more communications with Plaintiff, CMH failed to inform Plaintiff that CMH was a debt collector, that CMH was attempting to collect a debt and/or that any information obtained would be used for the purpose of debt collection.

49. CMH failed to ever provide Plaintiff with notice of Plaintiff's right to dispute the debt and/or request validation of the debt.

50. In one or more telecommunications with Plaintiff, CMH failed to provide meaningful disclosure of its identity to Plaintiff.

51. CMH's collection practices caused Plaintiff to suffer fear, anxiety, stress, sleeplessness, mental anguish mild depression and/or distraction from normal life.

52. CMH's sole purpose for making the statements was to intimidate Plaintiff into making a payment on the Account.

53. CMH 's purpose for calling Plaintiff was to attempt to collect the Account.

54. The telephone calls described above each constituted a "communication" as defined by FDCPA § 1692a(2).

55. On information and belief, DMP directly or indirectly, exerted influence over CMH and caused CMH to act in the manner that they did with respect to Plaintiff.

56. On information and belief, DMP knew that CMH repeatedly or continuously engaged in collection practices as described above.

57. During all times pertinent hereto, DMP (a) ratified the unlawful debt collection practices and procedures used by CMH and its employees and agents in connection with their common efforts to collect consumer debts, and/or (b) had knowledge of, approved, participated in, ratified and benefitted financially from the unlawful debt collection practices used by CMH and its employees and agents in attempts to collect an alleged debt from Plaintiff as alleged in this complaint.

58. The only reason that CMH and/or its representative(s), employee(s) and/or agent(s) made telephone call(s) to Plaintiff was to attempt to collect the Account.

59. The only reason that CMH and/or its representative(s), employee(s) and/or agent(s) had telephone conversation(s) with Plaintiff was to attempt to collect the Account.

60. CMH conducted all of its collection attempts without a surety bond on file with the Texas Secretary of State.

61. All of the conduct by CMH and/or DMP and/or their employees and/or agents alleged in the preceding paragraphs was done knowingly and willfully.

62. On information and belief DMP had actual knowledge that CMH repeatedly or continuously engaged in acts or practices prohibited by Chapter 392 of the Texas Finance Code, specifically, but not limited to, collecting in Texas without a surety bond on file with the Texas Secretary of State.

63. As a consequence of Defendants' collection activities and communication(s), Plaintiff seeks damages and attorneys fees and costs pursuant to 15 U.S.C. § 1692k and damages, an injunction, attorneys fees and costs pursuant to Tex. Fin. Code § 392.403.

## RESPONDEAT SUPERIOR

64. The representative(s) and/or collector(s) at CMH were employee(s) and/or agents of CMH at all times mentioned herein.

65. The representative(s) and/or collector(s) at CMH were acting within the course of their employment at all times mentioned herein.

66. The representative(s) and/or collector(s) at CMH were under the direct supervision and control of CMH at all times mentioned herein.

67. The actions of the representative(s) and/or collector(s) at CMH are imputed to their employer, CMH.

68. DMP was aware of and profited from the collection methods and practices used by CMH's employees.

69. The actions and inactions of CMH, and its employee(s) and/or agents, are imputed to DMP.

## COUNT I:  VIOLATIONS OF THE FDCPA 15 U.S.C. §1692, et seq. BY CAPITAL MANAGEMENT HOLDINGS, LLC A/K/A ELITE DEBT BROKERS

70. The previous paragraphs are incorporated into this Count as if set forth in full.

71. The act(s) and omission(s) of CMH and its representative(s), employee(s) and/or agent(s) violated 15 U.S.C. § 1692c(b) and 15 U.S.C. § 1692d generally and § 1692d(2)&(6) specifically and §1692e generally and specifically §1692e(2)&(3)&(4)&(5)&(7)&(8)&(10)&(11)&(13) and §1692g(a).

72. Pursuant to 15 U.S.C. §1692k Plaintiff seeks damages, reasonable attorney's fees and costs from CMH.

## COUNT II:  VIOLATIONS OF THE TEXAS FINANCE CODE
## BY CAPITAL MANAGEMENT HOLDINGS, LLC
## A/K/A ELITE DEBT BROKERS

73. The previous paragraphs are incorporated into this Count as if set forth in full.

74. The act(s) and omission(s) of CMH and its representative(s), employee(s) and/or agent(s) violated Tex. Fin. Code §392.101 and §392.301(a)(3)&(7)&(8) and §392.302(1) and §392.304(a)(4)&(5)&(8)&(12)&(13)&(14)&(17)&(19).

75. Pursuant to Tex. Fin. Code §392.403(a)(1), Plaintiff seeks an injunction against CMH enjoining it from future violations of the Texas Finance Code as described herein.

76. Pursuant to Tex. Fin. Code §392.403(a)(2) Plaintiff seeks damages from CMH.

77. Pursuant to Tex. Fin. Code §392.403(b) Plaintiff seeks attorney's fees and costs from CMH.

78. Pursuant to Tex. Fin. Code §392.403(e), Plaintiff seeks statutory damages of not less than $100 for each violation of the chapter in which Tex. Fin. Code §392.403(e) is codified.

## COUNT III:  INVASION OF PRIVACY (INTRUSION ON SECLUSION)
## BY CAPITAL MANAGEMENT HOLDINGS, LLC
## A/K/A ELITE DEBT BROKERS

79. In the alternative, without waiving any of the other causes of action herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein to the extent they are not inconsistent with the cause of action pled here, CMH is liable to Plaintiff for invading Plaintiff's privacy (intrusion on seclusion).  CMH intentionally caused the intrusion upon Plaintiff's solitude, seclusion, or private affairs, and such intrusion would be highly offensive to a reasonable person.

80. Plaintiff suffered actual damages from CMH as a result of the intrusion on Plaintiff's privacy.

### COUNT IV:  VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692, et seq. BY DEBT MANAGEMENT PARTNERS, LLC

81. The previous paragraphs are incorporated into this Count as if set forth in full.

82. By having a financial interest in CMH's conduct toward Plaintiff, DMP is liable for the act(s) and omission(s) of CMH and their representative(s), employee(s) and/or agent(s) for violations 15 U.S.C. § 1692c(b) and 15 U.S.C. § 1692d generally and § 1692d(2)&(6) specifically and §1692e generally and specifically §1692e(2)&(3)&(4)& (5)&(7)&(8)& (10)&(11)&(13) and §1692g(a).

83. Pursuant to 15 U.S.C. §1692k Plaintiff seeks damages, reasonable attorney's fees and costs from DMP.

### COUNT V:  VIOLATIONS OF THE TEXAS FINANCE CODE BY DEBT MANAGEMENT PARTNERS, LLC

84. The previous paragraphs are incorporated into this Count as if set forth in full.

85. By having a financial interest in CMH's conduct toward Plaintiff, DMP is liable for the act(s) and omission(s) of CMH and their representative(s), employee(s) and/or agent(s) for violations of Tex. Fin. Code §392.101 and §392.301(a)(3)&(7)&(8) and §392.302(1) and §392.304(a)(4)&(5)&(8)&(12)&(13)& (14)&(17)&(19).

86. DMP is additionally liable to Plaintiff under Tex. Fin. Code §392.306.

87. Pursuant to Tex. Fin. Code §392.403(a)(1), Plaintiff seeks an injunction against DMP enjoining it from future violations of the Texas Finance Code as described herein.

88. Pursuant to Tex. Fin. Code §392.403(a)(2) Plaintiff seeks damages from DMP.

89. Pursuant to Tex. Fin. Code §392.403(b) Plaintiff seeks attorney's fees and costs from DMP.

90. Pursuant to Tex. Fin. Code §392.403(e), Plaintiff seeks statutory damages of not less than $100 for each violation of the chapter in which Tex. Fin. Code §392.403(e) is codified.

### COUNT VI:  INVASION OF PRIVACY (INTRUSION ON SECLUSION) BY DEBT MANAGEMENT PARTNERS, LLC

91. In the alternative, without waiving any of the other causes of action herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein to the extent they are not inconsistent with the cause of action pled here, DMP is liable to Plaintiff for colluding with CMH to invade Plaintiff's privacy (intrusion on seclusion).  DMP intentionally caused the intrusion upon Plaintiff's solitude, seclusion, or private affairs, and such intrusion would be highly offensive to a reasonable person.

92. Plaintiff suffered actual damages from DMP as a result of the intrusion on Plaintiff's privacy.

### COUNT VII:  IMPUTED LIABILITY OF HARTFORD CASUALTY INSURANCE COMPANY FOR LIABILITY OF DEBT MANAGEMENT PARTNERS, LLC

93. The previous paragraphs are incorporated into this Count as if set forth in full.

94. The act(s) and omission(s) of DMP and its representative(s), employee(s) and/or agent(s) in violation of Tex. Fin. Code §392.101 and §392.301(a)(3)&(7)&(8) and §392.302(1) and §392.304(a)(4)&(5)&(8)&(12)&(13)&(14)&(17)&(19) and §392.306 are imputed to Hartford pursuant to Tex. Fin. Code § 392.102.

95. Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks damages, reasonable attorney's fees and costs from Hartford.

## **EXEMPLARY DAMAGES**

96. Exemplary damages should be awarded against CMH and/or DMP because the harm with respect to which Plaintiff seeks recovery of exemplary damages resulted from malice (which means that there was a specific intent by CMH and/or DMP to cause substantial injury or harm to Plaintiff) and/or gross negligence (which means that CMH's and/or DMP's actions and/or omissions (i) when viewed objectively from CMH's and/or DMP's standpoint at the time of the acts and/or omissions involved an extreme degree of risk, considering the probability and magnitude of potential harm to others and (ii) were such that CMH and/or DMP had an actual, subjective awareness of the risk involved but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others).

## **JURY TRIAL DEMAND**

97. Plaintiff is entitled to and hereby demands a trial by jury.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court grant the following:

98. Judgment in favor of Plaintiff and against Capital Management Holdings, LLC a/k/a Elite Debt Brokers as follows:

    a. Actual damages pursuant to 15 U.S.C. §1692k(a)(1);

    b. Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2);

    c. Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

    d. Actual damages pursuant to Tex. Fin. Code §392.403(a)(2);

    e. Statutory damages of not less than $100 for each violation of the chapter in which Texas Fin. Code §392.403(e) is codified;

    f. An injunction permanently enjoining CMH following trial of this cause from committing acts in violation of the Texas Finance Code as cited herein pursuant to Tex. Fin. Code §392.403(a)(1);

    g. Reasonable attorneys fees and costs pursuant to Tex. Fin. Code §392.403(b); and

    h. Exemplary damages pursuant to the common law of Texas, see, e.g. *Waterfield Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App. 1996); and

    i. Such other and further relief as the Court deems just and proper.

99. Judgment in favor of Plaintiff and against Debt Management Partners, LLC as follows:

    a. Actual damages pursuant to 15 U.S.C. §1692k(a)(1);

    b. Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2);

    c. Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

    d. Actual damages pursuant to Tex. Fin. Code §392.403(a)(2);

    e. Statutory damages of not less than $100 for each violation of the chapter in which Texas Fin. Code §392.403(e) is codified;

    f. An injunction permanently enjoining DMP following trial of this cause from committing acts in violation of the Texas Finance Code as cited herein pursuant to Tex. Fin. Code §392.403(a)(1);

    g. Reasonable attorneys fees and costs pursuant to Tex. Fin. Code §392.403(b); and

      h. Exemplary damages pursuant to the common law of Texas, see, e.g. *Waterfield Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App. 1996); and

      i. Such other and further relief as the Court deems just and proper.

100. Judgment in favor of Plaintiff and against Hartford Casualty Insurance Company as follows:

      a. Statutory damages in the amount of not less than $100 for each violation of Tex. Fin. Code chapter 392, pursuant to Tex. Fin. Code § 392.403;

      b. Damages and reasonable attorney's fees and costs pursuant to Tex. Fin. Code § 392.403;

      c. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

THE WOOD FIRM, PLLC

/s/ Jeffrey D. Wood
Jeffrey D. Wood, Esq.
ArkBN: 2006164
209 Hubbard Drive
Heath, TX  75032
TEL:  682-651-7599
FAX:  888-598-9022
EMAIL:  jeff@jeffwoodlaw.com
Attorney for Plaintiff